SHERWOOD VINSON V. THE STATE.

No. 20007.  Delivered March 13, 1940.

558

The opinion states the case.

*Bartlett, Carter & Rice* and *Robert G. Carter,* all of Marlin, and *Percy Foreman,* of Houston, for appellant.

*John C. Patterson,* Criminal District Attorney, and *Chas. E. Reagan,* Assistant Criminal District Attorney, both of Marlin, *A. C. Winborn,* and *Spurgeon Bell,* Assistant Criminal District Attorneys, both of Houston, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Conviction is for robbery, punishment assessed being ten years in the penitentiary.

The prosecution originated in Harris County, Texas, under a joint indictment charging appellant, Blackie Blackshear and D. L. Phifer with robbery. Upon application of appellant the venue was changed to Falls County, Texas, where the case against appellant was tried, and it is from a conviction in the District Court of said county last named that this appeal is prosecuted. The companion case against Blackshear is reported in 137 Tex. Cr. R. 264, 128 S. W. (2d) 1205.

On March 26, 1937, at twelve o'clock noon, five men held up and robbed A. B. C. Store No. 6 in Houston. They were armed with a sawed off shotgun, rifle and pistol, and were disguised in various ways. As the robbers were leaving in a car two police officers arrived in their car and gave chase. After it continued for two or three blocks parties in the robbers' car began shooting at the officers. A running gun fight between

the officers and the robbers continued for a distance of about five miles. At one point in the pursuit the robbers' car stopped and four men got out of the car. It was wet and muddy at this point, and one witness testified that the robbers got in the mud while out of the car. The officers' ammunition became exhausted and they abandoned the chase. It could not have been later than one o'clock p. m. when the officers abandoned the pursuit of the robbers.

Some witnesses at the scene of the robbery and during the pursuit identified Blackshear, others identified. Phifer, and others identified appellant as among the robbers, but no witness identified all three of them, and some witnesses at the store who knew appellant declined to identify him, and some testified that he was not one of the robbers. Two of the robbers were not identified by any witness.

Appellant did not testify upon the trial but by evidence of other witnesses raised the issue of an alibi, which was properly submitted by the court.

Appellant brings forward complaint at the admission in evidence of testimony as to shooting by the robbers along the line of flight, in front of a school house, near the Bowman residence and at the Flanagan residence. It will be seen by reference to the opinion in Blackshear's case (supra) that complaint was presented to the same evidence as here objected to, and there held to have been admissible under the circumstances shown. The same ruling is called for in the present case.

A question is presented by bill of exception number 1, which we believe reflects error.

We copy a part of bill of exception No. 1.

"BE IT REMEMBERED that upon the trial of the above entitled and numbered cause, the State introduced the following testimony, over the objection of the defendant, and after City Detective V. H. Clark of the Houston Police Department on voir dire examination had testified:

"(1) That the robbery of the A. B. C. store for which defendant was on trial was not committed within his presence or view;

"(2) That it was not committed, within his knowledge, within the view of any magistrate.

"(3) That no magistrate nor judge ordered him to arrest the defendant;

"(4) That no one told him the Defendant was about to escape;

"(5) That at the time he was told to arrest the Defendant

and before he arrested him, said witness knew that Defendant's home was at 218 South 75th Street, Houston, Texas, where the arrest was made, and that he lived at said address;"

It is not necessary to copy paragraphs 6, 7, 8 and 11 of said bill, but they reflect that from the time the witness was directed to arrest appellant three Justices of the Peace were available from either of whom witness could have secured a warrant of arrest for appellant, or a warrant to search his residence, and that witness had ample time to secure same.

Paragraph 12 of the bill follows:

"(12) That witness got orders to arrest the defendant around six o'clock in the afternoon of March 26th, 1938, and arrested him about 12:30 on the morning of the 27th, and at the time he was told to arrest the defendant he was likewise told that defendant's home was at 218 South 75th Street, Houston, Texas."

The bill then recites that over appellant's objection the witness among other things testified as follows: "I, in company with other officers, arrested the defendant the same night after the holdup that day, which occurred somewhere around noon. We arrested him around 12:30 or a quarter to one on Friday night in the house at 218 South 75th Street. Arrested with him were Blackie Blackshear, D. L. Phifer and Bobby Harris, a woman * * * * As to whether I noticed anything on their clothes, Blackshear was in shorts; his pants and shirt were off. Phifer was in shorts; I believe he had his shirt on. Sherwood Vinson was in pajamas * * * Their clothes were lying in the room, muddy and soiled around, and their shoes were muddy. We brought them to the station. The defendant put on those shoes I said were muddy and wore them away."

The objection urged to the evidence follows as reflected by the bill.

" * * * we object to any testimony or questions by the District Attorney or answers by the witness to the effect that the Defendant was arrested in the presence of D. L. Phifer or H. D. Blackshear for the reason that numerous witnesses, to-wit, Robert McCandless, Roy A. Reid and August Priest have positively identified Blackshear and Phifer as being participants in the alleged robbery and they are identified in connection with other highly inflammatory and aggravated offenses and such prejudices should and probably does exist in the minds of the jurors against the innocence of Blackshear and Phifer, and the fact that the Defendant was arrested in the presence of Phifer and Blackshear would be highly prejudicial against the presumed innocence of the Defendant Sher-

wood Vinson, and the identification of Sherwood Vinson is inconclusive, uncertain and insufficient and not in any degree as clear, cogent and concise as the identification of Phifer and Blackshear, and the circumstances of their identification coupled with the circumstance of the arrest of this Defendant some 12 hours after the commission of the alleged robbery and at the residence and in the home of the Defendant would be highly incriminating and such evidence of the arrest of the Defendant in company with Phifer and Blackshear is illegally obtained in

"(1) Violation of the Constitution of the United States; and

"(2) in violation of the laws of the State of Texas in that the witness testified he violated specifically Article 1, Section 9 of the Constitution of the State of Texas, Amendment 4 of the Constitution of the United States, the Bill of Rights, and Title 5, Chapter 1, Article 212 of the Code of Criminal Procedure of the State of Texas; Article 213 of the Code of Criminal Procedure of the State of Texas; Article 215 of the Code of Criminal Procedure of the State of Texas; Article 216 of the Code of Criminal Procedure of the State of Texas, and the decisions construing those Articles and Constitutional Provisions, and such evidence does not come within any exception to such provisions of the laws requiring that warrants issue before arrest or search, * * *"

The last paragraph of said bill recites the following:

"And as a part of this bill of exception, defendant would show the Court that the prosecuting attorneys, in their address to the jury, repeatedly argued the circumstance of the arrest of this defendant in company with Phifer and Blackshear as strongly tending to prove him guilty of participating in the robbery of the A. B. C. Store No. 6."

The bill is approved without qualification save to say that officer Clark testified that "he had information * * that a party had seen Sherwood Vinson at the holdup and knew he was one of them and that if he would watch his house we could catch him when he came in."

Articles 212, 213 and 215 of the Code of Criminal Procedure set forth very clearly the circumstances under which a peace officer may arrest without a warrant. It is not necessary here to copy them, but reference thereto will show that the recitals in the bill of exception under consideration negatives the presence of a single circumstance or condition which would permit the arrest of appellant without a warrant. In his qualification to the bill the trial court evidently had in mind Article 215 C. C. P., which permits a peace officer to arrest without

warrant where he has been informed that a felony has been committed, but apparently overlooked the qualifying and limiting language that the offender must be about to escape and there was no time to secure a warrant. The presence of the conditions placed upon the right to arrest by the limitation mentioned is negatived by the recital in the bill.

Article 727a C. C. P. provides: "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."

Said article has been given effect many times. See Gill v. State, 134 Tex. Cr. 363, 115 S. W. (2d) 923; Waltrip v. State, 134 Tex. Cr. R. 202, 114 S. W. (2d) 555; Weeks v. State, 132 Tex. Cr. R. 524, 106 S. W. (2d) 275; Rippy v. State, 122 Tex. Cr. R. 101, 53 S. W. (2d) 619; Roberts v. State, 112 Tex. Cr. R. 429, 17 S. W. (2d) 42.

There seems no question but that appellant's arrest was illegal and the evidence obtained as a result thereof should have been excluded. The error in admitting it calls for a reversal unless it may be said to have been harmless. It seems difficult to reach such a conclusion under the circumstances here present. The issue of alibi was in the case. It may be assumed that the State put the objectionable evidence in the record, not in aid of appellant but because it was thought to be helpful to the State. It certainly furnished a predicate for an argument that mud on the shoes of appellant indicated that he was present with the other robbers during the flight and at the point where they got out of their car into the mud; and also, grounds for argument that the presence of Blackshear and Phifer at appellant's house after the robbery was a strong circumstance of his participation with them in the robbery. It not only furnished a predicate for such an argument, but it is affirmatively certified that such argument was made more than once by representatives of the State. What effect the illegal evidence which supplied the basis for such argument, together with repeated reference to it, may have had on the jury is entirely too speculative for us to hold the error in admitting the evidence harmless.

The judgment is reversed and the cause remanded.